NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHAD ROBERT BOUDREAU, *Appellant.*

No. 1 CA-CR 15-0120
FILED 9-13-2016

Appeal from the Superior Court in Maricopa County
No.  CR2013-103520-003
The Honorable Erin O'Brien Otis, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Ballecer & Segal, LLP, Phoenix
By Natalee Segal
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Jon W. Thompson and Chief Judge Michael J. Brown joined.

---

**J O H N S E N**, Judge:

¶1            Chad Robert Boudreau appeals his conviction and sentence for second-degree burglary.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2            The evidence at trial, viewed in the light most favorable to sustaining the conviction, showed that police responding to a report of a home burglary found Boudreau with financial documents, pepper spray and safety-deposit keys taken from the house.[1]  Boudreau's female companion was found with a black bag full of documents taken from the house.  Boudreau's companion testified she had followed Boudreau through the back door into the house, where she picked up the black bag and stuffed documents into it.  A neighbor who called 9-1-1 testified he saw a beam of light move through the house, then saw Boudreau and his female companion walk away from the back porch of the house.  Boudreau admitted to the arresting officer that he had been in the backyard.  At trial, however, he testified he had never been in the backyard or inside the house, and that the items discovered in his possession had fallen out of a truck parked in the driveway of the house when he opened the vehicle's door.

¶3            The jury convicted Boudreau of second-degree burglary, but acquitted him of theft of means of transportation.  The superior court found that Boudreau had been convicted of five prior felonies, and accordingly was a category-three repetitive offender.  The court sentenced Boudreau to the presumptive term of 11.25 years in prison.  Boudreau filed a timely notice of appeal.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 13-4031 (2016) and -4033(A) (2016).[2]

---

[1]        *State v. Boozer*, 221 Ariz. 601, 601, ¶ 2 (App. 2009).

[2]        Absent material revision after the relevant date, we cite a statute's current version.

**DISCUSSION**

**A.    The Jury's Question**.

¶4        Boudreau argues the superior court abused its discretion by refusing to respond "no" when the jury asked during deliberations whether the backyard and the patio were part of a "residential structure" as defined in the burglary instruction.  The court had instructed the jury that burglary required proof that the defendant "[e]ntered or remained unlawfully in or on a residential structure" with the intent to commit a theft or felony therein.  The court further had defined a residential structure as "any structure, movable or immovable, permanent or temporary, adapted for both human residence and lodging whether occupied or not."  When the court conferred with counsel about the jury's question, defense counsel stated that the answer to the question was so clear that the court should simply answer "no."  The prosecutor responded, however, that whether a patio is a residential structure would depend on the circumstances.  Ultimately, the court responded to the jury, "Please refer to the closing instructions as given."

¶5        When "the jury appears to be confused about a legal issue, and the resolution of the question is not apparent from an earlier instruction, the trial judge has a responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria."  *State v. Ramirez*, 178 Ariz. 116, 126 (1994) (quotation omitted).  The superior court, however, has broad discretion in determining whether and how to respond to jury questions.  *See id.*

¶6        The court did not abuse its discretion by refusing to respond that neither the patio nor the backyard was a "residential structure" and instead simply referring the jury to the earlier instructions.  The jurors' question was not a pure question of law.  Rather, the question arose as they attempted to match the evidence concerning the features of the patio and backyard with the definitional requirements of a "residential structure."  Had the court responded "no" as defense counsel asked, the court would have violated the provision of the Arizona Constitution prohibiting judges from commenting on the evidence.  *See* Ariz. Const. art. 6, § 27 ("Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."); *see State v. Roque*, 213 Ariz. 193, 213, ¶ 66 (2006).

¶7        To the extent that Boudreau is arguing that the court should have responded by defining "structure" pursuant to A.R.S. § 13-1501(12) (2016) as "any place with sides and floor separately securable from any other structure attached to it," he raises this argument for the first time on

appeal, and accordingly has waived all but fundamental error review. *See State v. Henderson*, 210 Ariz. 561, 568, ¶ 22 (2005). On fundamental error review, defendant has the burden of proving that the court erred, that the error was fundamental in nature, and that he was prejudiced thereby. *Id.* at 567, ¶ 20. Boudreau has failed to meet his burden. The prosecutor argued that Boudreau had entered the house itself without permission and took items from the house that did not belong to him, or acted as an accomplice by helping his female companion commit the burglary; the prosecutor never argued that Boudreau had committed the burglary by entering or removing items from the patio or the backyard. Accordingly, Boudreau has failed to show how the verdict could have been any different if the jury had been instructed on the definition of "structure," as necessary to show prejudice on fundamental error review.

## B.    Sufficiency of the Evidence.

**¶8**        Boudreau also argues the evidence was insufficient to show that he entered the home. We disagree. We review *de novo* the sufficiency of the evidence to support a conviction. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Sufficient evidence "is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Id.* at ¶ 16 (quoting *State v. Mathers*, 165 Ariz. 64, 67 (1990)). Not only did his companion testify that she had followed Boudreau into the house through the back door, Boudreau was found shortly thereafter with financial documents, keys and pepper spray that the victim testified were previously in the house. Moreover, a neighbor testified he saw Boudreau and his female companion walk away from the area of the back door shortly after he saw a beam of light moving inside the house. Reasonable persons could have found this evidence demonstrated beyond a reasonable doubt that Boudreau had entered a residential structure, as necessary for the burglary conviction.

## C.    Alleged Vouching.

**¶9**        Boudreau argues the prosecutor improperly vouched for the testimony of the female companion twice during closing argument by arguing that she "was upfront" about what happened that night, and once during rebuttal closing argument by arguing that the witness would have gotten in more trouble at trial by not telling the truth, and she "didn't do that."

**¶10**        To determine whether a prosecutor's remarks are improper, we consider whether the remarks called to the attention of jurors matters they would not be justified in considering, and the probability, under the

circumstances, that the jurors were influenced by the remarks. *State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000). There are "two forms of impermissible prosecutorial vouching: (1) where the prosecutor places the prestige of the government behind its witness; [and] (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. King*, 180 Ariz. 268, 276-77 (1994) (quoting *State v. Vincent*, 159 Ariz. 418, 423 (1989)). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (quoting *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998)). "Prosecutorial misconduct constitutes reversible error only if (1) misconduct exists and (2) 'a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial.'" *Id.* (quoting *State v. Anderson*, 210 Ariz. 327, 340, ¶ 45 (2005)).

¶11 Boudreau failed to object when the prosecutor asserted in closing argument that the witness "was upfront" about what happened that night. For that reason, we review for fundamental error only. Boudreau has failed to meet his burden on fundamental error review. In considering whether a prosecutor's argument is misconduct, this court "looks at the context in which the statements were made as well as 'the entire record and to the totality of the circumstances.'" *State v. Nelson*, 229 Ariz. 180, 189, ¶ 39 (2012) (quoting *State v. Rutledge*, 205 Ariz. 7, 13, ¶ 33 (2003)). We will not assume the prosecutor intended the most sinister meaning of ambiguous remarks. *See State v. Dunlap*, 187 Ariz. 441, 462-63 (App. 1996). In context, the prosecutor's argument in this case did not constitute vouching. The prosecutor did not place the prestige of the government behind the witness nor suggest that evidence outside the record supported the witness's testimony. Rather, the prosecutor argued the witness's testimony about what she could remember about the incident was credible, in light of her admission that she had committed burglary and her testimony that because she was a drug user at the time, she had significant gaps in her memory, so she could not testify where Boudreau went or what he did after she followed him into the house.

¶12 Boudreau did object on grounds of vouching to the prosecutor's argument that the witness had already pled guilty and that she would only get "in further trouble by not telling the truth about what happened that night . . . . The way you get in trouble going forward is you continue to not tell the truth, but [she] didn't do that." The court implicitly sustained the objection, asking the prosecutor to "rephrase that." The prosecutor immediately corrected himself, explaining, "The evidence that

you heard and [this witness's] own testimony was that that's not what she's doing." The prosecutor then argued that the evidence showed that the witness did not want to be in court, did not want to be involved, was nervous, and did not remember a lot of things that happened that night, but stated she "has done her best to avoid getting in any other trouble or involvements in any other way." The prosecutor concluded by arguing that in determining "whose versions of events to believe, every independent piece of evidence backs up exactly what [this witness] told you that night."

¶13        Because the prosecutor immediately linked his remarks to the evidence at trial, no improper vouching occurred. *See State v. Corona*, 188 Ariz. 85, 91 (App. 1997) (prosecutor's characterization of the witnesses as truthful did not constitute vouching because prosecutor made clear it was up to the jury to determine credibility of witnesses, and sufficiently linked argument to the evidence); *cf. United States v. Ruiz*, 710 F.3d 1077, 1086 (9th Cir. 2013) (use of "we know" was proper when used "to marshal evidence actually admitted at trial and reasonable inferences from the evidence, not to vouch for witness veracity or suggest that evidence not produced would support a witness's statements"). Moreover, the superior court instructed the jury that the lawyer's arguments were not evidence and that it was the jury's role to determine credibility of the witness. These instructions were sufficient to dispel any taint and render any vouching harmless error. *See State v. Payne*, 233 Ariz. 484, 512, ¶ 113 (2013).

## CONCLUSION

¶14        For the foregoing reasons, we affirm Boudreau's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:  AA

6